**EXHIBIT 1**

## SETTLEMENT AGREEMENT

MARIA ISABEL AGUIRRE ("AGUIRRE") and ABM INDUSTRIES INCORPORATED ("ABM") agree upon a compromise and settlement of all issues and disputes between them as set forth below:

### RECITALS

1. AGUIRRE is a former employee of ABM whose employment was terminated on or about March 17, 2017.

2. AGUIRRE filed a lawsuit against ABM styled *Isabel Aguirre v. ABM Industries Incorporated*, Cause No. 2:17-cv-01539-DGC, United States District Court for the District of Arizona on or about May 22, 2017 ("the LAWSUIT") alleging she was misclassified as an exempt employee and not paid overtime in violation of the Fair Labor Standards Act.

3. ABM denies the allegations in the LAWSUIT and maintains that AGUIRRE was properly classified as an exempt employee and not entitled to payment of any further wages or compensation. ABM has also asserted as a defense to the LAWSUIT that AGUIRRE was overpaid for mileage and expense reimbursement payments she received during her employment.

4. The Parties have now agreed to resolve all claims arising out of AGUIRRE'S employment with ABM and the LAWSUIT upon the following terms.

### AGREEMENT

1. **DISMISSAL OF LAWSUIT.** AGUIRRE agrees to dismiss the LAWSUIT with prejudice on or before the Effective Date of the Agreement described in ¶3(b) below.

2. **PAYMENT.** In consideration of the promises and undertakings of AGUIRRE as set forth in this Agreement, ABM agrees to pay the total sum of **$50,000.00** to AGUIRRE and her attorney within 14 days of the Effective Date of this Agreement and subject to a) receipt of this Agreement signed by AGUIRRE, b) signed W-9 forms from AGUIRRE and her attorney, and c) the Court's approval of this Agreement. The payment will be made as follows:

   a. One check will be made payable to AGUIRRE in the gross amount of **$20,000.00** for back pay/wages and usual and customary taxes will be withheld from the payment. AGUIRRE acknowledges she is not otherwise entitled to this payment. AGUIRRE will be issued a W-2 for this payment.

   b. One check will be made payable to AGUIRRE in the amount of **$20,000.00**, for which a 1099 will be issued. This payment to AGUIRRE represents payment for alleged liquidated damages under the FLSA. It is not back pay or wages and AGUIRRE acknowledges that she is not otherwise entitled to this payment. No amounts will be withheld from this payment for taxes.

  c. One check will be made payable to Matheson & Matheson in the amount of **$10,0000.00**, for which a 1099 will be issued as payment for attorneys' fees and costs.

  AGUIRRE and her attorney agree to make their own provisions regarding taxes on the sum they receive and affirm they have not relied upon any representation by ABM or their attorneys or representatives as to the tax consequences of this Agreement. In the event that the total payment or any portion thereof on which taxes on the payment set forth in Paragraph 2(b) above has not been paid or is deemed by any federal, state or other taxing authority to be subject to taxes, AGUIRRE agrees to indemnify and hold harmless ABM against any and all penalties or damages incurred by it resulting from the failure to pay taxes or penalties on that portion of the settlement monies paid pursuant to this Agreement.

  AGUIRRE further acknowledges that the payments referred to in this Paragraph shall be the entire obligation of ABM under this Agreement and it is expressly understood and agreed that no additional amounts will be paid by ABM for attorneys' fees, court costs, or for any other expenses or costs arising out of or in any way related to the LAWSUIT.

  3. **AGUIRRE WAIVER AND RELEASE OF ALL CLAIMS.**

  a. **GENERAL RELEASE OF ALL CLAIMS.** In consideration of the promises, payments, and/or undertakings of ABM set forth in this Agreement, AGUIRRE, individually and on behalf of her heirs and assigns, agrees to release, waive and forever discharge any and all claims she has or may have against ABM INDUSTRIES INCORPORATED, and any and all of its past, present and future subsidiary, affiliated and/or successor companies/entities, and all of their past, present and future officers, directors, employees, attorneys, agents, assigns, insurers, representatives, counsel, benefit plan administrators, other administrators (collectively "ABM RELEASED PARTIES"), for any claim or potential claim which has occurred up to the date of execution of this Agreement, including but not limited to, any and all claims arising or resulting from AGUIRRE'S employment with or termination of employment from any ABM RELEASED PARTIES through the date of this Agreement and any and all claims which were or which could have been asserted in the LAWSUIT. AGUIRRE specifically releases and discharges ABM RELEASED PARTIES from all liability for damages, affirmative or equitable relief, claims, judgments, or attorneys' fees and agrees not to institute any claim for damages, affirmative or equitable relief, judgments, or attorneys' fees, nor authorize or assist any other party to institute any claim to recover damages, judgments, or attorneys' fees on their behalf against ABM RELEASED PARTIES for any damages, judgments, or attorneys' fees including, but not limited to, any and all claims for unpaid wages, breach of contract or those arising under or based upon the Fair Labor Standards Act; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act; the Age Discrimination in Employment Act; the Family and Medical Leave Act; the Fair Credit Reporting Act; the Employee Retirement Income Security Act of 1974; 42 U.S.C. § 1981; any claims under A.R.S §23-425, including any whistleblower claims; the Arizona Civil Rights Act; the Arizona Employment Protection Act; Arizona wage statutes (A.R.S. Title 23); the anti-retaliation provisions of Arizona's Workers' Compensation Act; any Arizona state law or statute; any age-related or class action related laws or the laws of any states in which any such actions are pending; any claims arising under the federal or any state constitutions; any and all claims pursuant to federal, state or local statute or ordinances; any and all claims pursuant to contract, quasi contract, common law or tort; any other claims known or unknown, suspected or

unsuspected, concealed or hidden, or whether developed or undeveloped, existing or accruing up through the date of AGUIRRE'S execution of this Agreement.

      b.    **SPECIFIC RELEASE OF ADEA CLAIMS.**  As noted in ¶3(a) above, this Agreement is intended to release and discharge any claims AGUIRRE has or may have under the Age Discrimination in Employment Act ("ADEA"). To satisfy the requirements of the Older Workers' Benefits Protection Act ("OWBPA"), AGUIRRE acknowledges the following:

      i.    AGUIRRE waives her rights or claims under the ADEA in exchange for consideration in addition to anything of value to which she is already entitled. AGUIRRE does not waive her rights or claims that may arise under the ADEA after the date this Agreement becomes effective.

      ii.    By this Agreement, AGUIRRE is advised in writing to consult, and has in fact consulted, with an attorney prior to executing this Agreement.

      iii.    AGUIRRE has 21 calendar days from receipt of this Agreement to consider whether to sign this Agreement. AGUIRRE may sign the Agreement any time within this time period. If AGUIRRE signs the Agreement before the 21-day period expires, AGUIRRE does so to expedite the Agreement and waives his right to take the remaining days to consider the Agreement. Changes to this Agreement, whether material or immaterial, do not restart the running of the 21 day consideration period.

      iv.    AGUIRRE can revoke her signature any time within seven (7) calendar days after signing it. To revoke her signature pursuant to the OWBPA, AGUIRRE must do so in writing, by sending e-mail notice to Miranda Tolar, Vice President & Deputy General Counsel, Employment Law, miranda.tolar@abm.com before the expiration of the seven-day period. If AGUIRRE'S signature is not revoked before the expiration of the seven (7) calendar days, this Agreement will be enforceable and irrevocable as of the 8th day after AGUIRRE signs this Agreement ("Effective Date"). The payments described in ¶2 above will not be made until after the Effective Date.

      4.    **ABM RELEASE OF ALL CLAIMS.**  In consideration of the promises, payments, and/or undertakings of AGUIRRE set forth in this Agreement, ABM and ABM RELEASED PARTIES agree to release, waive and forever discharge AGUIRRE for any claim or potential claim which has occurred up to the date of execution of this Agreement, including but not limited to, any and all claims arising or resulting from or related to AGUIRRE'S employment with any ABM RELEASED PARTIES through the date of this Agreement and any and all claims which were or which could have been asserted in the LAWSUIT.

      5.    **NO REHIRE.**  AGUIRRE agrees that ABM shall have no obligation to hire and/or rehire her nor to consider her for hire and/or rehire, nor to deal with her in any respect at any location or place of business with regard to employment or potential employment. AGUIRRE further agrees that she will never apply for or otherwise seek or accept employment with or by ABM, its parent, subsidiary, affiliated and/or successor companies at any time in the future, at any location, place of business or dealership owned or operated by ABM, and that this provision is purely contractual and in no way discriminatory or retaliatory on RELEASED PARTIES' part.

6. **NEUTRAL REFERENCE.** ABM agrees to provide a neutral employment reference, including only AGUIRRE'S dates of employment, last job title and last rate of pay to any future prospective employer seeking a reference from ABM, provided AGUIRRE refers all potential employers to "InVerify" at 1-866-295-7363 and provides them with the employer code of 112200. In addition, ABM agrees to provide AGUIRRE with a neutral employment letter reference attached as Exhibit A hereto. ABM will not state that AGUIRRE is inelgible for rehire.

7. **INTERNAL RE-CLASSIFICATION OF TERMINATION.** ABM agrees to internally re-classify AGUIRRE'S separation from her employment with ABM from "discharge for cause" to "voluntary quit."

8. **NO ADMISSION OF LIABILITY.** It is expressly understood and agreed by both parties that this Agreement does not in any manner constitute an admission of any obligation, liability or wrongdoing by ABM or AGUIRRE but that it, in fact, each party expressly denies any such obligation, liability or wrongdoing. The parties are entering into this Agreement in compromise and settlement of disputed claims for the sole purpose of avoiding further trouble, litigation, and expense. The parties agree that, except to the extent necessary to enforce this Agreement, neither this Agreement nor any part of it may be used or admitted into evidence in any judicial, administrative, or other proceeding as an admission of any kind by the other party.

9. **COMPLIANCE WITH INVESTIGATIONS/SUBPOENAS.** This Agreement does not limit AGUIRRE'S ability to file a charge or complaint with the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), the Occupational Safety and Health Administration ("OSHA"), the Securities and Exchange Commission ("SEC"), or any other federal, state, or local governmental agency or commission ("Government Agencies"). AGUIRRE understands this Agreement does not limit her ability to communicate with Government Agencies or participate in an investigation or proceeding that may be conducted by a Government Agency, including providing documents or other information, without notice to ABM. While AGUIRRE will not be entitled to receive compensation based on charges or claims filed with the EEOC, NLRB, or OSHA as a result of her waiver of all claims, this Agreement does not limit her right to receive an award for information provided to the SEC under SEC Rule 21F-17 or whistleblower information provided to another federal agency.

10. **NO ASSIGNMENT OF CLAIMS.** The parties represent and warrant that neither has assigned any part of any claim either party may have against the other to anyone and that no person is entitled to any portion of the proceeds paid under this Agreement (except AGUIRRE'S attorney as described above). Each party agrees to indemnify fully and hold the other harmless from any and all claims derivative of their own, including any attorneys' fees incurred in defending against any such claims.

11. **ENTIRE AGREEMENT.** It is understood and agreed that the terms of this Agreement are contractual and not mere recital and that there are no agreements, understandings, or representations made by ABM, except as expressly stated herein. This Agreement constitutes the entire understanding and agreement between the parties and may not be changed or modified in any way except in writing signed by the parties. In the event an action to enforce any part of this Agreement is brought by either party, the parties agree that the prevailing party shall recover from the other her or its costs and attorneys' fees.

12. **SEVERABILITY**. If, for any reason, any provision of this Agreement is held invalid, either in whole or in part, such invalidity shall not affect any other provision of this Agreement not held to be invalid and each such other provision shall continue in full force and effect.

13. **CHOICE OF LAW**. This Agreement shall be construed in accordance with the laws of the State of Arizona.

14. **COUNTERPARTS**. This Agreement may be executed simultaneously or in any number of counterparts, each of which shall be deemed an original, equally admissible in evidence against any Party who has signed it, all of which together shall constitute one and the same agreement. Signatures delivered by facsimile or electronic transmission shall be deemed original signatures.

IN SIGNING THIS DOCUMENT, I STATE THAT I HAVE READ THIS AGREEMENT, THAT I HAVE HAD THE OPPORTUNITY TO REVIEW IT WITH AN ATTORNEY OF MY CHOICE, THAT I HAVE HAD A REASONABLE TIME TO CONSIDER IT BEFORE SIGNING IT, AND THAT I FULLY UNDERSTAND AND VOLUNTARILY ENTER INTO IT.

ACCEPTED, APPROVED AND ENTERED into on the dates shown below.

Date:_____

_____
MARIA ISABEL AGUIRRE

Date: 12/5/2017

ABM INDUSTRIES INCORPORATED
By: _____
Printed Name: Miranda Tolar
Title: Vice President; Deputy GC

5

4826-2817-1095.1

12. **SEVERABILITY**. If, for any reason, any provision of this Agreement is held invalid, either in whole or in part, such invalidity shall not affect any other provision of this Agreement not held to be invalid and each such other provision shall continue in full force and effect.

13. **CHOICE OF LAW**. This Agreement shall be construed in accordance with the laws of the State of Arizona.

14. **COUNTERPARTS**. This Agreement may be executed simultaneously or in any number of counterparts, each of which shall be deemed an original, equally admissible in evidence against any Party who has signed it, all of which together shall constitute one and the same agreement. Signatures delivered by facsimile or electronic transmission shall be deemed original signatures.

IN SIGNING THIS DOCUMENT, I STATE THAT I HAVE READ THIS AGREEMENT, THAT I HAVE HAD THE OPPORTUNITY TO REVIEW IT WITH AN ATTORNEY OF MY CHOICE, THAT I HAVE HAD A REASONABLE TIME TO CONSIDER IT BEFORE SIGNING IT, AND THAT I FULLY UNDERSTAND AND VOLUNTARILY ENTER INTO IT.

ACCEPTED, APPROVED AND ENTERED into on the dates shown below.

Date: 12/4/17

MARIA ISABEL AGUIRRE

Date: _____

ABM INDUSTRIES INCORPORATED

By: _____

Printed Name: _____

Title: _____

5

# EXHIBIT A



1111 Fannin St.
Suite 1500
Houston, Texas 77002
Office: (713) 210-2100

Re:    Maria Isabel Aguirre
       SSN: xxx-xx-5774

To Whom It May Concern:

Pursuant to company policy regarding reference information, ABM provides the following information with respect to Maria Isabel Aguirre:

| | |
|---|---|
| Dates of Employment: | March 1, 1991 – March 17, 2017 |
| Last Position Held: | Senior Accountant |
| Last Rate of Pay: | $34.18/hour |